OPINION OF THE COURT
Edward J. McLaughlin, J.
The two cases now before the court share a similar fact pattern. Both involve children who are handicapped whose parent(s) seek residential and habilitative services through a voluntary placement agreement with the Onondaga County Department of Social Services pursuant to sections 358-a and 384-a of the Social Services Law. In both cases the parent(s) of the child were required to transfer custody of the child to the Commissioner of Social Services in order for the child to receive rehabilitative services. None of these parents wish to transfer custody of the child to the commissioner. The parent(s) contend that the New York statutory requirement that a parent transfer custody prior to the receipt of services pursuant to sections 358-a and 384-a of the Social Services Law violates the Federal Rehabilitation Act (US Code, tit 29, § 794) and the Fourteenth Amendment of the Constitution of the United States.
In the Davis case (L-25-82), a petition for the approval of foster care was filed with the court on February 4, 1982. The matter first appeared in court on March 23, 1982. At *1003 that time the court appointed a Law Guardian for the child and adjourned the case for service by publication on the father of the child. An adjournment date of May 10, 1982 was given to the case.
In the Scott case (L-30-82), a petition for the approval of foster care was filed with the court on February 11, 1982. The matter first appeared in court on March 30, 1982, at which time the court appointed a Law Guardian for the child. The matter was adjourned until April 23, 1982. On April 23, 1982 the matter was adjourned for trial on May 10, 1982.
On May 10, 1982, after hearing argument, the court reserved decision and gave the parties 30 days in which to submit memoranda of law to the court. On May 18, 1982 the court received a memorandum of law in both cases; one from the attorney for the parents in L-25-82 and one from the Law Guardian for the child in L-30-82 briefing the court as to the unconstitutionality of the controlling statutory sections. The Department of Social Services failed to submit any memorandum of law to the court.
LAW
The New York Legislature has created a statutory scheme which governs the placement of minor children in residential treatment centers. When the parent of a handicapped child is unable to provide sufficient and adequate care and habilitation for a child in the home setting and seeks a residential placement for their child who is in need of financial assistance from the Department of Social Services, the parent is required to comply with the provisions of section 384-a of the Social Services Law. In Onondaga County a parent who requests assistance with residential placement for a child is given a four page “Voluntary Placement Agreement” to complete. As it is written, this form, following the statutory scheme of section 384-a of the Social Services Law, requires the parent to voluntarily transfer the care and custody of the child for whom placement is sought to the Commissioner of Social Services. The parent must complete and sign this voluntary placement agreement as a prerequisite to qualifying for residential placement services. When the voluntary placement agree *1004 ment has been executed, the Department of Social Services is required to petition the Family Court for approval of the written agreement. (Social Services Law, § 358-a.) The court is also asked to make a determination as to whether a residential placement is in the best interests of the minor child.
There is also Federal law governing the placement of handicapped children. In 1973 the Congress of the United States passed the Rehabilitation Act (US Code, tit 29, § 794, commonly referred to as Rehabilitation Act, § 504 [87 US Stat 394]). This section provides that: “No otherwise qualified handicapped individual in the United States, as defined in section 706 (6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.” The Federal regulations that amplify the requirement of the Rehabilitation Act are found at 45 CFR 84.52 (a).
Both the New York statute and the Federal statute were construed by the United States District Court for the Southern District of New York in a case decided on February 10, 1982 (Joyner v Dumpson, 533 F Supp 233). This action, certified as a class action on October 21, 1975, included in the class effected by the decision “all children in the state of New York who are in need of special services outside their home, whose parents cannot afford the full cost of those services, and who cannot receive such services unless their parents relinquish their custody to the Commissioner of Social Services of the local social services district and consent to a court finding that they are unable to care for their children.” (533 F Supp, at p 235, n 1.) Joyner involved a factual situation similar to the one now before the court.
In Joyner (533 F Supp 233, supra), the Southern District Court found that sections 358-a and 384-a of the Social Services Law violated section 504 of the Rehabilitation Act as well as the Fourteenth Amendment to the Constitution of the United States, in that New York’s statutory scheme discriminated against handicapped children by requiring their parents to relinquish custody in order to receive *1005 residential rehabilitative services. In reaching its decision the court relief upon prior decisions made by the Second Circuit Court of Appeals in the cases of New York Assn. for Retarded Children v Carey (612 F2d 644), Kampmeier v Nyquist (553 F2d 296), and a Western District of New York case, Sherry v New York State Educ. Dept. (479 F Supp 1328). In Joyner (p 238) the court found that there was no substantial justification for the State’s requirement that parents relinquish custody of their children prior to admission of their children to residential treatment centers. In dealing with the Fourteenth Amendment issue the court applied the intermediate standard for evaluating the State statute and found that (p 242) “[s]ince the statutory requirement that * * * parents relinquish custody of their children to the state prior to admission of the children to residential care facilities infringes [parents’] fundamental right to family integrity, and since the requirement serves no important state interest * * * the requirement violates [parents’] substantive due process rights.” The court then entered a declaratory judgment declaring the portion of the New York statute that required parents to give custody of their children who required residential care to the Department of Social Services prior to the admission of those handicapped children to care unconstitutional.
“The general rule is that an unconstitutional statute, whether federal or state, though having the form and name of law, is in reality no law, but is wholly void” (20 NY Jur 2d, Constitutional Law, § 83, pp 159-160), if it has been declared unconstitutional by a competent tribunal. (16 CJS, Constitutional Law, § 101.) “That one part of an act is unconstitutional does not necessarily invalidate the entire act.” (20 NY Jur 2d, Constitutional Law, § 86, p 162.) Recently, the trend has been for courts to find “a statute held unconstitutional * * * inoperative as long as the decision holding it invalid is maintained, and that as long as the decision stands the statute is dormant but not dead.” (16 CJS, Constitutional Law, § 101, p 473.) At this time this court can find no evidence that Joyner is not good law. Accordingly, since those sections of 358-a and 384-a of the Social Services Law are inoperable which require the parents of a child in need of residential care to relinquish *1006 custody of that child to the Department of Social Services as a prerequisite to the voluntary placement of the child for treatment, this court now finds that it is in the best interest of the subject children to receive residential treatment. In any event, since the children who are the subjects of the petitions now before the court are clearly members of the class certified by the District Court, they are the beneficiaries of the court’s decision. The court also finds that the Department of Social Services is required to provide residential and habilitative services for the subject children. Further, the court finds that the parent(s) of the subject children do not have to give custody of their children to the Department of Social Services in that at the present time in New York State there is no statutory authority for the department to require a transfer of custody as a prerequisite to providing services. Petition approving voluntary placement is granted. Custody of the children is to remain with their parent(s).